UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLAUDE FREIJE,

        Plaintiff,

vs.

MONTMORENCY COUNTY,
et al.,

        Defendants.
_____/

Case No. 16-cv-12251
Hon. Mark A. Goldsmith

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS CHAD BROWN AND
MONTMORENCY COUNTY'S MOTION FOR SUMMARY JUDGMENT (Dkt. 51);
DENYING DEFENDANTS DIANE IVES AND TROPHY CLASS PROPERTY
MANAGEMENT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 48); AND DENYING
DEFENDANT NANCY GUIMOND'S MOTION FOR SUMMARY JUDGMENT (Dkt. 42)**

        This matter is before the Court on several motions for summary judgment, from Defendants Nancy Guimond (Dkt. 42); Diane Ives and Trophy Class Property Management (Dkt. 48); and Chad Brown and Montmorency County (Dkt. 51). Briefing on all motions is complete, and a hearing was held on December 7, 2017. For the reasons that follow, the Court finds that Brown and Montmorency County are entitled to summary judgment on Plaintiff Claude Freije's federal claims and, therefore, dismisses those claims with prejudice. Because the dismissal of these federal claims means that this case no longer retains a federal character, the Court dismisses Freije's state-law claims without prejudice and denies those portions of Defendants' motions challenging the state-law claims without prejudice.

## I. BACKGROUND

1

On June 30, 2010, Plaintiff Claude Freije purchased property located at 11839 M-33, Atlanta, Michigan (the "Property") from Defendant Nancy Guimond. Ives Statement of Material Facts ("SMF") ¶ 1 (Dkt. 48). Under the terms of the contract for the sale, Freije would pay Guimond $80,000 for the Property, at a rate of $600 per month. See Land Contract, Ex. A to Guimond Br., at PageID.800 (Dkt. 52-2). Freije opened a restaurant called "The Dinner Table" on the Property, and purchased restaurant equipment to use at The Dinner Table. SMF ¶ 5. At some point, Freije began having financial difficulties, and on May 22, 2013, he executed a quit claim deed in lieu of Guimond foreclosing on the Property. See id. ¶ 13. Freije continued to live on the Property after the execution of the quit claim deed, with the understanding that he would have to vacate the premises within ninety days once Guimond found a purchaser for the Property. See Freije Dep. Tr., Ex. A to Pl. Resp. to Ives Mot., at 30-31, PageID.1877 (Dkt. 60-2).

On May 28, 2014, Guimond entered into an agreement with Defendant Diane Ives, a real estate agent, to sell the Property, including "the assets of a business known as The Dinner Table." Ives SMF ¶¶ 6, 17. On June 18, 2014, the Property, including the restaurant equipment that Freije had purchased, was sold to Tracy and Glenn Gilliam. Id. ¶¶ 35-36. Freije learned of the sale on this same day when Glenn Gilliam arrived at the Property and asked when Freije would be moving out. Id. ¶ 38. Freije then texted Ives, and she told him that he could obtain the paperwork regarding the sale when it was put in at the Register of Deeds office. Id. ¶ 39.

Freije contacted the Attorney General's office; he asserts that they told him this was larceny by conversion. Ives SMF ¶¶ 40-41. He then called the local prosecutor's office; prosecutor Terrie Case later returned his call. Freije Dep. Tr. at 69-71, PageID.1887. The record reflects some disagreement about what was said in this call. Freije testified that Case told him that this was larceny by conversion, and that it was legal for him to demand money from Guimond, then "go

2

after" Ives for any money he did not receive from Guimond. Id. at 72, PageID.1887. Case, for her part, testified that she remembered speaking with Freije, but could not recall what she said. See Case Dep. Tr., Ex. W to Ives Mot., at 20, PageID.627 (Dkt. 48-24). Case did, however, say that she never told Freije to send a letter to Ives. Id. at 27, PageID.629. She could not recall telling him that the sale of the personal property of The Dinner Table would amount to larceny by conversion. Id. at 28, PageID.629.

Freije then contacted Guimond and told her that he wanted compensation for his restaurant equipment. See Ives SMF ¶ 45. She eventually paid him $10,000. See id. ¶ 49. The same day that Freije collected the $10,000 from Guimond – June 30, 2014 – he wrote a letter to Ives, and gave it to a friend to drop off. Freije Dep. at 109-110, PageID.1897. The letter said:

> I do not know if Nancy [Guimond] filled you in on what you two did so I will. When you two put my equipment on her land contract and sold it, I called an attorney. He wanted $3,500 to review and start court proceedings, but I thought it was criminal and not civil. So I called the State Attorney General's office and this is what they said. What you two did was criminal. You took stolen goods and then sold stolen goods for a profit. It is covered under the RICO statues, [sic] which if convicted carries mandatory jail time. So all I have to do they said was file a report at the Sheriff's or State Police and then talk to the prosecutor, which is of course Terri [sic] Case. I did not file but I did talk to Terri [sic], and she confirmed what I was told. No cost or aggravation to me. I did collect all the necessary paperwork she needs, including land contract, sellers agreement & so on. Nancy agreed to pay me quite a bit more but I am still out $6000. She made me promise, in writing, not to prosecute her. But there is no safe guard for you.
>
> So from you I want the $6000 your scam cost me. The thing you have going for you, when you talk to Nancy, is that if I do not get my money and file, they will also prosecute Nancy, you two are conspirators.
>
> I also called the licensing board, Bob [redacted] (manager). He said as soon as I filed a complaint with them, they would send out investigators to go through all your paperwork. I also have 2 other people who want to file complaints against you (3 total).

> So $6000 is cheap compared to hiring attorneys to fight a criminal case and have the state also going through your work. They will be separate investigations. You have my cell ([redacted]). I will be out of town until next week. Part of me really wants to stick it to you but I am not that way. I just want what I was due. When I get back, I will either see you or Terri [sic] Case, let me know what you decide.

Letter from Freije to Ives, Ex. R to Ives Mot. (Dkt. 48-19). Freije testified that he was asking for $6,000 because Guimond had told him that Ives received a 6% commission and "I figured if they sold the place for a hundred thousand, she got $6,000 out of it. . . . actually I wanted twenty, but because that's all she got out of it, I figured she's only giving up money that she shouldn't have gotten in the first place." Freije Dep. Tr. at 117, PageID.1899.

After receiving Freije's letter, Ives contacted the Montmorency Sheriff's Department. SMF ¶ 61. A short time later Defendant Chad Brown, then a sergeant with the Sheriff's Department, met Ives at her office, at which time she gave him a copy of Freije's letter. Id. ¶ 62. Brown and Ives did not know one another, other than as members of the community, prior to her call to the Montmorency Sheriff's Department.[1] See Ives Dep. Tr., Ex. D to Ives Mot., at 76, PageID.535 (Dkt. 48-5).

Brown found the letter to be threatening in nature, Brown Dep. Tr., Ex. N to Pl. Resp. to Brown Mot., at 51, PageID.2303 (Dkt. 61-15), but had never investigated an extortion case before, id. at 11, PageID.2293. After he completed his interview of Ives, Brown consulted the statute for extortion. Id. at 31-32, PageID.2298. Brown felt that the letter constituted extortion, but he wanted a prosecutor's opinion on the case. Id. at 37-38, PageID.2300; see also Incident Report, Ex. P to Pl. Resp. to Brown Mot., at 3 (cm/ecf page) (Dkt. 61-17) ("I had Prosecutor [Terrie] Case review the letter and determine if the letter has the potential to be considered a criminal act."). Brown

---

[1] Nor did Brown and Freije know one another, other than as members of the community. See Freije Dep. Tr. at 173, PageID.1913; Brown Dep. Tr. at 14, PageID.2294.

4

corresponded via email with the Montmorency Prosecutor's office regarding Freije's letter. See 7/9/2014 Email from Terrie Case to Chad Brown, Dinner Table, Ex. L to Pl. Resp. to Brown Mot. (Dkt. 61-13); 7/9/2014 Email from Chad Brown to Terrie Case, Dinner Table, Ex. M to Pl. Resp. to Brown Mot. (Dkt. 61-14). Case considered the letter to be a malicious threat to accuse Ives of a crime, written with the intent to extort money. Case Dep. Tr. at 23-25, PageID.628-629.

At some point between July and September 2014, Freije moved to Gaylord, Michigan. Freije Dep. Tr. at 44, 48, PageID.1880, 1881. On September 12, 2014, a felony complaint was issued against Freije, charging him with extortion. See Felony Complaint, Ex. AA to Ives Mot. (Dkt. 48-28). The complaint was signed by Brown, as the complaining witness, and the warrant for Freije's arrest was authorized by assistant prosecutor Vicki Kundinger. Id. At some point in September 2014, Freije received a call from the Montmorency Sherriff's Department that a warrant had been issued for his arrest, and he turned himself in that evening. Freije Dep. Tr. at 128-129, PageID.1901-1902. Freije remained at the police station for several hours, and was released before midnight after posting bond. Id. at 130-133, PageID.1902-1903.

On November 10, 2014, Case filed a petition for the appointment of a special prosecutor in the criminal case against Freije, as Freije had indicated that he would be calling Case as a witness. See Petition for Appointment of Special Prosecutor, Ex. EE to Ives Mot. (Dkt. 48-32). Such a petition is referred to the Michigan Attorney General's office, which has discretion to take the case itself as the special prosecutor or refer it to the Prosecuting Attorneys Coordinating Counsel (the "PACC"). See Cunningham Dep. Tr., Ex. FF to Ives Mot., at 8-10, PageID.655-666 (Dkt. 48-33). If a PACC takes the case, a local county prosecutor would handle the case as a special prosecutor. Id. at 10, PageID.666. In this case, the Michigan Attorney General's office decided to turn the case over to the PACC. See id. The Otsego County prosecutor, however,

decided not to take the case, and the case then came back to the Michigan Attorney General's office. See id. at 15-16, PageID.657.

Richard Cunningham, chief of the criminal division of the Michigan Attorney General's office, reviewed the case and decided not to prosecute. Id. at 4, 19, PageID.654, 658. An order of Nolle Prosequi was entered on November 19, 2014, dismissing the case against Freije. See Motion/Order of Nolle Prosequi, Ex. JJ to Ives Mot. (Dkt. 48-37). Cunningham nonetheless testified that "there was no doubt in my mind that this was a good warrant because I think the charges were supported . . . I felt pretty strongly that there was a case here. You know, that's not the reason I dismissed it, that I didn't think the evidence supported it. I just thought the other criteria, you know, within our discretion, is it a good use of our limited resources." Cunningham Dep. Tr. at 19-20, PageID.658.

Freije filed the instant complaint on June 20, 2016. He alleged the following claims: (i) 42 U.S.C. § 1983 – Illegal Search and Seizure – False Arrest/Imprisonment (against Brown); (ii) 42 U.S.C. § 1983 – Malicious Prosecution (against Brown); (iii) malicious prosecution under state law (against Brown); (iv) abuse of process (against Ives); (v) civil conspiracy (against Guimond and Ives); (vi) civil conspiracy (against Ives and Brown); (vii) tortious interference with a business expectancy (against Guimond and Ives); (viii) false arrest/false imprisonment under state law (against Brown); and (ix) constitutional violations (against Montmorency County). Defendants have now moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the

6

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Freije alleges both federal and state claims against the various defendants. The Court will first address the federal claims, which are against Brown and Montmorency County. To prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that "(1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileged, or immunities secured by the Constitution or laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). Here, there is no dispute that Brown, as a police officer, was acting under the color of state law. The Court must, therefore, address whether Brown deprived Freije of a constitutional right.

7

Brown raises the defense of qualified immunity, which protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Johnson v. Mosely, 790 F.3d 649, 653 (6th Cir. 2015) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that it does not apply. Rodriguez v. Passinault, 637 F.3d 675, 689 (6th Cir. 2011).

In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry: (i) "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[;]'" and (ii) "whether the right in question was 'clearly established' at the time of the violation." Tolan v. Cotton, 134 S. Ct. 1861, 1865-1866 (2014) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)) (alterations in Tolan). While the Court in Saucier mandated that the two steps be addressed in order, the Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), held that courts have discretion regarding which step to address first. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.

### A.  42 U.S.C. § 1983 – Illegal Search and Seizure – False Arrest/Imprisonment

Freije claims that Brown violated his Fourth Amendment right to be free from unreasonable search and seizure, because Freije was arrested without Brown considering the totality of the circumstances or completing a cursory investigation. Compl. ¶ 37 (Dkt. 1). He argues that "at the time Defendant Brown made the determination to apply for the arrest warrant for extortion, at the

8

time the warrant was issued, and at the time Plaintiff was arrested, there was absolutely no probable cause that he had violated the extortion statu[t]e." Pl. Resp. to Brown Mot. at 13, PageID.2131.

To succeed on a claim for false arrest under § 1983, a plaintiff must prove that the police lacked probable cause to arrest him. Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). Probable cause exists where there are "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). "A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform 'a prudent person, or one of reasonable caution,' that the suspect 'has committed, is committing, or is about to commit an offense.'" Fridley, 291 F.3d at 872 (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).

Freije was arrested for extortion, which Michigan law defines as follows:

> Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatever, or with the intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Mich. Comp. Laws § 750.213. Extortion thus requires that an individual "(1) either orally or by a written letter or printed communication, maliciously threatens (2) to accuse another of any crime or offense . . . (3) with the intent to extort money or any pecuniary advantage whatever, or with the intent to compel the person threatened to do or refrain from doing any act against his or her will." People v. Harris, 845 N.W.2d 477, 483 (Mich. 2014) (emphasis in original).

The Court concludes that Brown is entitled to qualified immunity on this claim. The Supreme Court has stated that an "objective reasonableness" standard "defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional

9

arrest." Malley v. Briggs, 475 U.S. 335, 344 (1986). Thus, Brown "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Ireland v. Tunis, 113 F.3d 1435, 1448 (6th Cir. 1997) (quoting Malley, 475 U.S. at 341). However, "if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. (quoting Malley, 475 U.S. at 341). "Probable cause determinations, even if wrong, are not actionable as long as such determinations pass the test of reasonableness." Id. (quoting Jeffers v. Heavrin, 10 F.3d 380, 381 (6th Cir. 1993)) (alterations omitted).

Reasonable officers could disagree as to whether there was probable cause that Freije had committed the crime of extortion. With respect to the first element, Freije does not dispute writing or sending the letter. The requirement of "malice" means that "only those threats made with the intent to commit a wrongful act without justification or excuse, or made in reckless disregard of the law or of a person's legal rights" are sufficient. Harris, 845 N.W.2d at 487. Freije wrote that "[p]art of him really wants to stick it to [Ives] but I am not that way." It would, therefore, be reasonable for an officer to believe that Freije intended to commit a wrongful act against Ives simply to hurt her, and without any justification or excuse. Case had also informed Brown that, while she had spoken to Freije, she did "not remember that this was the topic," and that she "believe[d] that [she] told him his issue was civil, but that he could speak to an officer and make a report if he desired[.]" See 7/8/2014 Email from Terrie Case to Sherrie Ehlers and Chad Brown, Dinner Table, Ex. V to Ives Mot. (Dkt. 48-23). It was reasonable for Brown to believe that Freije did not have a justification or excuse for making these demands of Ives, and therefore was acting with malicious intent.

10

It was also reasonable to believe that Freije was accusing Ives of committing a crime – Freije writes that what Ives did was "criminal," "carries mandatory jail time," and that there is "no safe guard for [Ives]." Lastly, regarding the third element, Freije also writes that he "want[s] the $6,000 your scam cost me," and that "$6,000 is cheap compared to hiring attorneys to fight a criminal case," which reasonably supports a belief that Freije intended to extort money from Ives or to compel her to pay him. Brown's ultimate conclusion of probable cause was confirmed by Case, who advised Brown that she believed the letter met the elements of extortion.

Freije argues that Brown should have completed a more thorough investigation into the underlying real estate transaction and have interviewed Freije and Guimond before requesting an arrest warrant. Pl. Resp. to Brown Mot. at 15, PageID.2133. But "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused" once probable cause has been established. Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir. 1999). Brown spoke with Ives, reviewed Freije's letter, consulted the statute on extortion, and spoke to the county prosecutor regarding whether to bring charges against Freije, whose opinion was that the sending of the letter appeared to be criminal. Even if Freije's view were adopted that an officer has some duty to investigate, Brown's actions show that he performed a reasonable investigation and had no duty to look further.

Freije points out that the case against him was eventually dismissed, and argues that he did not commit the crime of extortion. But this is not the appropriate inquiry – a conviction requires a finding that Freije committed the crime beyond a reasonable doubt. All Brown needed was a "reasonable grounds for belief," and it was not objectively unreasonable for him to conclude that such grounds existed here.

It would not "be clear to a reasonable officer that [Brown's] conduct was unlawful in the situation he confronted," Saucier, 533 U.S. at 202, and "a reasonably competent investigator armed with [Brown's] knowledge could have acted as [Brown] did," Ireland, 113 F.3d at 1449. Brown is entitled to qualified immunity on this claim.

### B. 42 U.S.C. § 1983 – Malicious Prosecution

Freije also claims that Brown is liable for malicious prosecution because he caused, instituted, and/or continued criminal proceedings against Freije for a crime that Brown knew Freije did not commit. Compl. ¶¶ 43-44.

To succeed on a malicious-prosecution claim under § 1983, a plaintiff must prove: (i) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (ii) that there was a lack of probable cause for the criminal prosecution; (iii) that the plaintiff suffered a deprivation of liberty as a consequence of a legal proceeding, apart from the initial seizure; and (iv) that the criminal proceeding was resolved in the plaintiff's favor. Sykes v. Anderson, 625 F.3d 294, 308-309 (6th Cir. 2010).

Brown is also entitled to qualified immunity on this claim. While Freije has a right to be free from malicious prosecution, see Sykes, 625 F.3d at 308, "the right said to have been violated must be defined 'in light of the specific context of the case, not as a broad general proposition.'" Johnson v. Moseley, 790 F.3d 649, 654 (6th Cir. 2015) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). Freije has not established that he has a right to be free from malicious prosecution by an officer where the officer simply forwards his truthful incident report to a prosecutor.

The Sixth Circuit has explained that "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively

or neutrally participating." Webb v. United States, 789 F.3d 647, 660 (6th Cir. 2015) (quoting Sykes, 625 F.3d at 308 n.5). There must be "some element of blameworthiness or culpability in the participation," as "truthful participation in the prosecution decision is not actionable." Johnson, 790 F.3d at 655. "A police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" Id. (quoting Newman v. Twp. of Hamburg, 773 F.3d 769, 772 (6th Cir. 2014)).

Here, although Brown forwarded his incident report to the prosecutor's office, his report did not contain falsehoods, such that his participation in Freije's arrest was marked with "some element of blameworthiness or culpability," Johnson, 790 F.3d at 655. On these facts, Freije cannot show that his constitutional right to be free from malicious prosecution was violated. See Newman, 773 F.3d at 772 ("Any discrepancy [between officers' accounts] at worst shows negligence or perhaps a lack of attention to detail, which does not amount to malicious prosecution. No reasonable jury could find that Sergeant Calhoun intentionally or recklessly played fast and loose with the facts.") (internal citation omitted); Kinkus v. Village of Yorkville, Ohio, 289 F. App'x 86, 91 (6th Cir. 2008) (finding that defendant was entitled to qualified immunity where his actions "consisted only of completing a police report, signing a blank criminal complaint for that did not recommend any particular charge, and soliciting a written report from [a fireman]" and his "police report did not contain false information"); cf. Miller v. Maddox, 866 F.3d 386, 390-391 (6th Cir. 2017) (finding that officer participated in decision to prosecute where his false statements in an affidavit and at a preliminary hearing set plaintiffs' prosecution in motion).

As such, Brown is entitled to qualified immunity, and this claim is dismissed.

### C. Constitutional Violations

Freije argues that Montmorency County employed certain customs, policies, and practices that were the moving force behind the violations of his constitutional rights. Compl. ¶ 98. Specifically, Freije alleges that these practices included a failure to supervise officers; a failure to adequately train officers regarding reasonable seizures, probable cause, lawful prosecution, and thorough investigation of crimes; a failure to supervise, review, and/or discipline officers who were violating constitutional rights; and a failure to require officers to comply with established policies and/or procedures. Id. ¶ 99.

A municipality is not vicariously liable in a § 1983 action merely because it employs someone who has committed a constitutional violation. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Instead, a municipality may be held liable where a plaintiff demonstrates that the alleged federal violation occurred because of a municipal policy or custom. See id.; accord D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014). The plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005) (quoting Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003)). In order for a municipality's failure to train its employees to be properly thought of as a "policy or custom" that is actionable under § 1983, the failure to train must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388-389 (1989).

Freije argues that Montmorency County "acted with deliberate indifference by failing to train its officers on the elements of crimes," specifically extortion. Pl. Resp. at 25, PageID.2143. The Court disagrees. Freije's only evidence regarding some failure of Montmorency County to train its officers is that Brown testified that (i) he received no specific training on the crime of

14

extortion, Brown Dep. Tr. at 10, PageID.2293; (ii) this was the first extortion crime he ever handled, id. at 11, PageID.2293; and (iii) the last time he recalled having any training on a specific intent crime was when he was at the police academy, id.

As Defendants point out, Brown's lack of experience regarding the elements of extortion does not show that he was inadequately trained; it may simply show that this crime does not occur often in Montmorency County. Further, even if Brown's training were inadequate, this alone cannot result in liability for Montmorency County. See City of Canton, 489 U.S.at 390-391 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Additionally, the Court has already determined that Brown did not violate any of Freije's clearly-established rights. "The violated right in a deliberate-indifference case . . . must be clearly established because a municipality cannot deliberately shirk a constitutional duty unless that duty is clear." Arrington-Bey v. City of Bedford Heights, Ohio, 858 F.3d 988, 995 (6th Cir. 2017) (finding that plaintiff's claim against municipality for failure to train its police and jailers about mental health care for arrestees failed because she did not show that the allegedly violated right was clearly established) (emphasis in original). Accordingly, Freije's claim against the County must fail.

Summary judgment is granted on this claim.

**D. The State-Law Claims**

Having determined that Freije's federal claims lack merit, the case does not retain a federal character. Accordingly, pursuant to 28 U.S.C. § 1367, the Court declines to extend supplemental jurisdiction over Freije's state-law claims, counts III through VIII, and dismisses them without

prejudice. Brown v. Cuyahoga Cnty., 517 F. App'x 431, 436 (6th Cir. 2013) ("28 U.S.C. § 1367 allows a district judge to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction." (ellipsis omitted)).

## IV.    CONCLUSION

For the reasons provided, Defendants Brown and Montmorency County's motion for summary judgment (Dkt. 51) is granted in part and denied in part, and Defendants Guimond, Ives, and Trophy Class Property Management's motions for summary judgment (Dkts. 42, 48) are denied without prejudice. The federal statutory and constitutional claims are dismissed with prejudice, and the state-law claims are dismissed without prejudice.[2]

SO ORDERED.

Dated: July 16, 2018　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2018.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[2] Because this opinion dismisses all claims in this case, all other pending motions (Dkts. 67, 69, 70, 72, 73) are denied without prejudice.

16